**In re REVCO D.S., INC. et al., Debtors.**

**Bankruptcy Nos. 588–1308 to 588–1321, 588–1305, 588–1761 to 588–1812 and 588–1820.**

United States Bankruptcy Court, N.D. Ohio.

June 28, 1991.

See also 131 B.R. 615.

John Silas Hopkins, III, Baker & Hostetler, Cleveland, Ohio, for debtors.

Conrad Morgenstern, Cleveland, Ohio, U.S. Trustee.

Robert J. White, O'Melveny & Myers, Los Angeles, Cal., for Unofficial Committee of Secured Bank Lenders.

John Richards Lee, S.E.C., Chicago, Ill.

E.K. Geisler, Jr., McGuire, Woods, Battle & Boothe, Richmond, Va., for Unofficial Committee of Unsecured 12⅛% Noteholders.

E. Jane Bell, Guy, Lammert & Towne, Akron, Ohio, for Boyle Inv. Co.

Howard Mentzer, Mentzer, Vuillemin & Robinson, Akron, Ohio, for Stoneybrook Plaza, Inc.

I. William Cohen, Pepper, Hamilton & Scheetz, Detroit, Mich., for Unsecured Trade Creditors' Committee.

Brad Eric Scheler, Fried, Frank, Harris, Shriver & Jacobson, New York City, for Unsecured Noteholders' Committee.

Richard Lieb, Robert Feinstein, Kronish, Lieb, Weiner & Hellman, New York City, for Unofficial Preferred Equity Committee.

Bruce Hunsicker, Brouse & McDowell, Akron, Ohio, for NCNB Texas Nat. Bank.

John J. Guy, Guy, Lammert & Towne, Akron, Ohio, for Thomas Davidson, Bernard Vanderline, Mitchell Company, Jack Eckerd Corp. and Adams Plaza.

Rajko Radonjich, Mentzer, Vuillemin & Robinson, Akron, Ohio, for Concord Assets Group.

Dale V. Wilson, Akron, Ohio, for Cottonwood Development.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THE OBJECTION TO VARIOUS LEASE CLAIMS FILED BY THE TRADE CREDITORS' COMMITTEE

HAROLD F. WHITE, Bankruptcy Judge.

A hearing was held on January 22, 1991, before this Court on the "Objection to Vari-

ous Lease Claims" [Obj. to Claims Doc. ("Doc.") No. 431] (the "Objection") filed by the Trade Creditors' Committee (the "Committee"). Due notice of said hearing was provided. Present at the hearing were I. William Cohen for the Committee; Bruce Hunsicker for NCNB Texas National Bank ("NCNB"); John J. Guy for Thomas Davidson and Bernard Vanderline in care of the Mitchell Company (Claim No. 8476), the Jack Eckerd Corp. (Claim Nos. 8510—8512), and Adams Plaza (Claim No. 8439); E. Jane Bell for Boyle Investment Company, successor-in-interest to Pridgen & Associates (Claim No. 6301); Howard Mentzer for Stoneybrook Plaza, Inc., as an assignee; and Rajko Radonjich for Concord Assets Group; and Dale Wilson for Cottonwood Development (Claim No. 8166).

Based upon the pleadings filed, the evidence adduced, and the arguments of counsel, this Court makes the following Findings of Fact:

### FINDINGS OF FACT

1. Jurisdiction of this matter is proper pursuant to 28 U.S.C. § 1334(a) and General Order No. 84 of the Northern District Court of Ohio. Venue is proper pursuant to 28 U.S.C. § 1409. The hearing on the Objection constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

2. On July 26 and 28 and on October 4 and 5, 1988, Revco and its related and subsidiary corporations ("Revco" or the "Debtors") filed chapter 11 petitions. Revco has continued in the management of its business and properties as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code, 11 U.S.C. §§ 1107 and 1108. By Orders of this Court, Revco's chapter 11 cases are being jointly administered.

3. Revco operates over 1,100 drug stores in ten states. Revco leases the premises in which to operate its drug stores.

4. Revco's leases follow a general pattern. The lessee is one of four Revco subsidiaries that existed for the purpose of acting as lessees: Revco Discount Drug Centers, Inc., a Michigan Corporation, the Debtor in Case No. 588–1317; Revco Discount Drug Centers, Inc., an Ohio Corporation, the Debtor in Case No. 588–1318; Revco Discount Drug Centers of Cincinnati, Inc., the Debtor in Case No. 588–1319; or White Cross Stores, Inc., the Debtor in Case No. 588–1321. The obligation of the lessee is guaranteed by Revco D.S., Inc., the parent of the four lessees, and the Debtor in Case No. 588–1308.

5. Many landlords have filed both a claim against the Revco subsidiary that was the lessee and a claim against Revco D.S., Inc., based on the lease guaranty. Many of the direct claims on the leases exceed the maximum amount permitted by section 502(b)(6) of the Bankruptcy Code. Many of the claims on the guaranties also exceed the maximum amount permitted by section 502(b)(6).

6. At the hearing, the Committee called as a witness, Robin Camera, property accounting supervisor at Revco. (*Tr.* 43 [1]) Ms. Camera's duties at Revco include reviewing lease rejection calculations and monitoring the rent payments. (*Id.*) Ms. Camera calculated the amount, based upon section 502(b)(6), that should be allowed in both the Revco subsidiary case and the Revco D.S., Inc. case. Those amounts are listed on Exhibit A of the Objection.

7. The following landlords have reached an agreement with Revco that section 502(b)(6) will cap the amount of their claims. These landlords have agreed to the following claim amounts:

| Claimant | Claim Amount |
|---|---|
| Atlantic Freeholds No. II, Claim No. 6060 | $160,297.20 |
| Ayman Karkoutly, Claim No. 8438 | $166,557.69 |

---

**1.** "Tr." as used hereafter is a reference to the transcript of proceedings held on January 22, 1991 (Doc. No. 2348).

| Claimant | Claim Amount |
| --- | --- |
| M. Bert Storey, Claim No. 4505 | $149,171.37 |
| F. Sullivan, et al., Claim No. 3589 | $170,726.00 |
| Folsom Investments, Claim No. 8405 | $ 17,002.22 |
| Meridian Coca–Cola Bottling, Claim No. 8361 | $116,346.00 |
| Midlothian Plaza Joint Venture, Claim No. 5867 | $137,912.00 |
| William F. Shdeed, Claim No. 8934 | $110,260.89 |
| Sunstates Development, Claim No. 4506 | $152,366.54 |

(*Tr.* 45–48)

8. Counsel for NCNB Texas National Bank indicated that he was presently conferring with the Committee and Debtors regarding the amount of its claim.[2]

9. Mr. Guy is opposed to the Objection and stated that no statutory limitation exists concerning guarantor claims. (*Tr.* 53–54)

10. Mr. Mentzer, Mr. Radonjich, and Mr. Wilson stated that the Objection is premature in that there are possibly many leases which may be rejected in the future and affected by the decision on the present Objection. Mr. Mentzer indicated that a better way to address the issue is through classification of creditors in a proposed plan of reorganization. (*Tr.* 55–60)

11. Mr. Radonjich stated that if this Court determines that section 502(b)(6) applies to the subject claims, then he would stipulate to the following claim amounts:

| Claimant | Claim Amount |
| --- | --- |
| Concord Milestone Income Fund, Claim No. 8154 | $126,926.29 |
| Concord Milestone Income Fund, Claim No. 6523 | $127,529.61 |
| Richmond Plaza, Inc., Claim No. 8413 | $145,869.95 |
| Stoneybrook Plaza, Claim No. 8370 | $71,135.19 |
| Daychem Plaza Associates, Claim No. 8408 | $64,642.46 |
| Lockwood Plaza Associates, Claim No. 8407 | $82,318.82 |

(*Tr.* 60–64)

12. Mr. Wilson indicated he would confer with Mrs. Gordon at Revco regarding the method of calculating the lease rejection damages. The Committee specifically reserved its right to object to his damage calculation. (*Tr.* 66)

13. The Court granted leave to the opposing parties to file briefs on the issue at hand.

## POSITION OF THE PARTIES

It is the position of the Committee that the lease claims listed on Exhibit A of the Objection filed against Revco D.S., Inc., the guarantor, (the "Lease Claims") should be limited in amount by the provisions of section 502(b)(6).

It is the position of the Debtors that (1) each landlord should be allowed only one claim and (2) that claim should be no greater than the maximum amount permitted by section 502(b)(6).

Connecticut Mutual Life ("Connecticut") contends that no basis for reduction of its claim has been stated. *Connecticut's Brief*, p. 2, Doc. No. 518.

Frank G. Sullivan, Sidney E. Coxe, and Lamar N. Coxe ("Sullivan") contend the Objection does not provide a specific basis for objection to their claims and further fails to state how the proposed amount was calculated. Sullivan further requests this Court estimate the unliquidated portion of their claims pursuant to section 502(c)(1) of

2. See, *Agreed Order* regarding Claim Nos. 541, 542, 7000, 7062, and 7063, approved by the Committee, Debtors and NCNB, entered February 25, 1991, (Doc. No. 542).

the Bankruptcy Code, 11 U.S.C. § 502(c)(1). (*Response,* p. 2, Doc. No. 476).

The responses filed raise issues not properly before the Court at this time, and the Court will only address the following issue presented in the Objection.

## ISSUE

DOES SECTION 502(b)(6) OF THE BANKRUPTCY CODE, 11 U.S.C. § 502(b)(6), LIMIT THE CLAIMS OF LESSORS AGAINST DEBTORS FOR DAMAGES RESULTING FROM TERMINATION OF A LEASE OF REAL PROPERTY WHEN THE CLAIM IS BASED ON A GUARANTY OF THE LEASE?

## CONCLUSIONS OF LAW

After a review of the case law addressing the issue at hand, this Court concludes that section 502(b)(6) applies to limit a claim against a debtor who has guaranteed a lease. The weight of authority supports limiting such claims and the case law holding otherwise involves unique facts not present in this case.

Section 502(b)(6) provides, in pertinent part, that the Court shall allow a claim in its full amount "except to the extent that—

(6) if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—

(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—

(i) the date of the filing of the petition; and

(ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus

(B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates.

11 U.S.C. § 502(b)(6).

The purpose of the claim limitation in section 502(b)(6) is "to compensate the landlord for his loss while not permitting a claim so large ... as to prevent other general unsecured creditors from recovering a dividend from the estate." *3 Collier on Bankruptcy* para. 502.02(7) at p. 502–54 (15th ed. 1991) [citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 353 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 63 (1978)] U.S.Code Cong. & Admin.News 1978, 5787, 5849, 6309; *Vause v. Capital Poly Bag, Inc., (In re Vause),* 886 F.2d 794, 801–802 (6th Cir.1989).

Current and pre-Code case law support the conclusion that section 502(b)(6) applies to claims against debtor-guarantors. The court in *In re Rodman,* 60 B.R. 334 (Bankr.Okla.1986) held that section 502(b)(6) applies to claims based on lease guaranties. In *Rodman,* the debtor was a guarantor for a lease rejected by a related debtor lessee. The *Rodman* court, relying on *Oldden v. Tonto Realty Corp.,* 143 F.2d 916, 920 (2d Cir.1944) and other pre-Bankruptcy Code case law, reasoned that the "principles of rateable distribution are equally applicable in the case of a debtor-guarantor as they are in the case of a debtor-principal." (citations omitted) *Id.* at 335.

In *Oldden,* the Second Circuit ruled that a landlord must deduct the amount of security deposit held from the total claim allowable under the Bankruptcy Act rather than the larger provable claim. The Second Circuit also reviewed the history of the predecessor of section 502(b)(6) and explained the reason for the limitation on a landlord's claim for future rents due under the lease.

[A]llowance in full of such claims did not seem the appropriate answer, since other general creditors would suffer proportionately, and the claims themselves would often be disproportionate in amount to any actual damage suffered, particularly in the event of a subsequent rise in rental values. In truth, the landlord is not in the same position as other general creditors, and there is no very compelling reason why he should be treated on a par with them. For, after all, he has been compensated up until the date of the bankruptcy petition, he re-

gains his original assets upon bankruptcy, and the unexpired term in no way really benefits the assets of the bankrupt's estate. (footnote omitted)

143 F.2d at 920.

The *Oldden* court found further support for limitation of such claims in cases dealing with guaranty contracts for rent and stated "if this were not so 'a guarantor in reorganization is liable for more than his principal; that cannot be the meaning of the statute; the guaranty is a secondary obligation and must be subject to the same limitations as the primary'". *Id.* at 921, [citing *Hippodrome Bldg. Co. v. Irving Trust Co., (In re Radio-Keith-Orpheum Corp.)* 91 F.2d 753, 756, (2nd Cir.1937), certiorari denied, 302 U.S. 748, 58 S.Ct. 265, 82 L.Ed. 578 (1937)].

In a more recent decision, the court in *In re Thompson*, 116 B.R. 610 (Bankr. S.D.Ohio 1990) applied section 502(b)(6) to a claim against a debtor guarantor. The *Thompson* court relied on *Oldden* and *Hippodrome* and stated "[e]ven though § 502(b)(6) by its literal language does not expressly limit claims of a landlord against a lease guarantor, case law clearly indicates that § 502(b)(6) is equally applicable in a guarantor's bankruptcy case." *Id.* at 613.

The only reported case in which section 502(b)(6) was not applied to a claim against a debtor guarantor is *In re Danrik*, 92 B.R. 964 (Bankr.N.D.Ga.1988), wherein, the court noted that the unusual facts of the case supported allowing the claim in full. In *Danrik*, the debtor guarantor was solvent, all other claims had been paid in full, the claim was not disproportionately large, the lessee had not filed a bankruptcy petition, the plan had already been consummated, and the debtor guarantor had escrowed more than the amount of the claim pending outcome of the court's decision. This Court agrees with the decision in *Danrik* based upon the unusual facts of that case. However, the facts of the present case differ so greatly from *Danrik* that this Court must reach a different conclusion.

In a related decision, *Johnson v. Beck (In re Johnson)*, 117 B.R. 461 (Bankr.Minn. 1990), the court construed the comparable claim limitation in section 502(b)(7) and refused to apply it to an employee's claim against a debtor guarantor. The court criticized the *Rodman* decision for "reliance on vague principles of equity in bankruptcy". *Id.* at 470–476. In reaching its decision, the *Johnson* court mistakenly relied on *Bel–Ken–Assoc. Ltd. Partnership v. Clark*, 83 B.R. 357 (D.Md.1988) and *Kopolow v. P.M. Holding Corp. (In re Modern Textile, Inc.)*, 28 B.R. 181 (Bankr.Mo.1983) and *Danrik, supra*. The *Danrik* case is an isolated decision because of its unique facts, and *Bel–Ken* and *Modern Textile* held that the statutory cap for lease claims did not apply to *non-debtor* guarantors. Because of its flawed interpretation of these cases, this Court rejects the position of the *Johnson* court.

In the present case, the Debtors are parties to approximately 1,100 real property leases for their drug stores. (Finding No. 3.) The Objection addresses 55 Lease Claims filed as a result of rejected leases. The Debtors still may reject many more leases which would result in even more claims being filed against the four Revco subsidiaries, as lessee, and Revco D.S., Inc., as guarantor. (Finding Nos. 4 and 5.) Revco also has thousands of other general unsecured creditors. The relevant case law requires this Court to limit claims against Revco D.S., Inc., as guarantor. This limitation is proper and is in accordance with the statutory purpose to compensate the landlord for his loss, but limit the amount of the claim to allow other general unsecured creditors to receive distribution from the estate. *See, Oldden*, 143 F.2d at 920; *Vause*, 886 F.2d at 801–802; *Fisher v. Lee Bros. Value World, Inc.*, 486 F.2d 1037, 1038 (9th Cir.1973).

The responses of Connecticut and Sullivan are without merit. The Objection before the Court does not present specific objections to each claim but only seeks a determination of the application of section 502(b)(6) to claims against the debtor guarantor. This Court has ruled that it does apply.

Any objections as to specific amounts of the Lease Claims shall be heard by this Court at a later date, upon proper filing of objections and notice.

A separate Order shall be entered in accordance with these Findings of Fact and Conclusions of Law.

ORDER SUSTAINING OBJECTION TO VARIOUS LEASE CLAIMS FILED BY THE TRADE CREDITORS' COMMITTEE

Based upon the "Findings of Fact and Conclusions of Law on the Objection to Various Lease Claims filed by the Trade Creditors' Committee" entered on the 28th day of June, 1991,

IT IS THE ORDER OF THIS COURT that the "Objection to Various Lease Claims" (the "Objection") (Obj. to Claims Doc. No. 431) filed by the Trade Creditors' Committee is SUSTAINED;

IT IS FURTHER ORDERED that the claims listed on Exhibit A of the Objection are disallowed to the extent they exceed the amount allowed under section 502(b)(6) of the Bankruptcy Code, 11 U.S.C. § 502(b)(6), and

IT IS FURTHER ORDERED that counsel for the Trade Creditors' Committee shall serve the Findings and Order on all parties.

So Ordered.